We move to the second case this morning, Sanchelima v. Walker Stainless Equipment. Ms. Gollins? May it please the Court, this case boils down to the enforcement of a common provision, the exclusion of consequential damages, including lost profits, in a common type of contract, an exclusive distributor contract. And the UCC permits parties on the one hand to limit remedies, so long as those remedies don't fail of their essential purpose. And on the other hand, under a separate subsection, the UCC allows parties to exclude consequential damages, so long as that provision is not unconscionable. These are two separate subdivisions in the UCC, the first one an issue of fact, the second an issue of law. So even if a limited remedy provision fails of its essential purpose, which is what we have in this case, the exclusion of a consequential damages provision is enforceable here. The parties agreed on it, and it's enforceable so long as it's not unconscionable. The Wisconsin Supreme Court has not squarely addressed this issue, and this Court can determine with confidence that the Wisconsin Supreme Court would follow and adopt the independent approach. One of the issues that we're going to grapple with is Murray v. Holliday-Rambler is not an uncommon case in Wisconsin. If you shepherdize it, instacite it, 150 or so citations to that case. It's a common citation in commercial litigation. That's the Wisconsin Supreme Court's case. How can we as the Seventh Circuit make this determination on behalf of the Wisconsin Supreme Court? Well, one, you can make this determination as an eerie prediction. And really, it's not a fair reading of Murray to say that it truly considered and grappled with this issue. It didn't discuss the interplay between subsection 2 and subsection 3. The only citation to subsection 3 in the Court's opinion is in a footnote where it just quoted the UCC provision in its entirety. And even if you could tease out of Murray that it somehow adopted this dependent view, that was close to 40 years ago at a different time. And since then, the law has shifted significantly to the independent view over a course of the last 25 to 30 years. Isn't that still the Wisconsin Supreme Court's jurisdiction to be able to make that change versus our court? Well, this court can, under eerie, make a confident prediction about how the Supreme Court would rule. If the court has any question about that, yes, this court can certify it for the Wisconsin Supreme Court to decide. But given that this involves an issue in the UCC, and that this court and other courts have determined under the eerie doctrine, confidently how a state court would rule at this point, given all of the case law and the weight of the authority in favor of the independent approach, we believe this court could make that determination. Isn't certification, if we're unclear, if the weight of the authority, and I understand from your submissions, that Illinois and Indiana have now gone with the independent approach. The case law that might have been cited in Murray was from Illinois. They've now changed. But it's one thing to say it's unclear. It's another thing to say it's different. And I'm grappling with this idea of what our role is as the United States Court of Appeals for the Seventh Circuit versus what the Wisconsin Supreme Court's role is. Yes, and I do believe it's not a fair reading of Murray to say that the court decided this issue, considered it, weighed both subsections of the UCC, and had a holding that really, truly put this issue to bed. I do think that case involved, the fact that it involved a consumer's motorhome factored in as well. And it really didn't, it relied on Section 2-715 to hold that all damages become available under the UCC when the limited remedy provision fails. And the only citation to support for that was the 1972 Wyden-Somers Treatise, which at that time followed the dependent approach. The 2012, sixth edition of Wyden-Somers clearly advocates for the independent approach and shows that the majority of cases have now decided that issue. So I do think it is an incorrect reading of Murray to interpret it as having decided squarely this issue that Wisconsin mandates in a commercial context, where there's two sophisticated parties,  However, doesn't Chief Judge Wood in Fidelity and Deposit, I'm sorry, I apologize, the 2014 case, doesn't she say exactly that's the problem, this is what the state of Wisconsin law is? I'm referencing, I apologize, Southern Financial Group versus McFarland State Bank, 763 F. 3rd, 735. And in that case, nowhere did it mention subsection 3 or an exclusion of the consequential damages. And it's still, the limitation of remedies in that case, in the Southern Financial case, did not fail of its essential purpose. So while she may have been stating that that was the state of the law, I'm not sure it really addressed it directly more than an indicta reference to do so. And in fact, the Southern Financial case has helpful supporting analysis that talks about supporting the freedom to contract. And the fact that a limited remedy provides no relief in one circumstances does not mean that the limited remedy fails of its essential purpose. And in that context, looking at that case, it doesn't necessarily address the same issue. Now Krebs gets a little bit closer, but again, that case was decided about 30 years ago. And it recognized a few other courts had adopted the independent approach, but felt bound by Murray. But once again, it cited the five cases in Murray, three of which have been abrogated by those state Supreme Courts in favor of the independent approach, one of which the federal court has disagreed with another federal court in favor of the independent approach. So we would submit that Krebs is really no longer a reliable prediction, given the change in the law over the course of the 25 years. So you indicate that we are in a different position than buyers, Judge Mannion's opinion in buyers, because of the passage of time? Yes, Your Honor. And I do think looking closely at the Murray case, it could be determined that more was read into it than was there. But yes, that is exactly right. Given this case involves the application of a Wisconsin statute that resides in the UCC, and given the fact that Wisconsin gives substantial weight to cases from other jurisdictions when resolving issues under the UCC, and given the clear weight of authority, the federal courts can, under the Erie Doctrine, predict that the Wisconsin Supreme Court, and in this case, would follow the independent approach. But again, if there's any question that the court would not adopt that approach, then the Wisconsin Supreme Court should be the one to determine if it's going to be an outlier in this area. And based on White and Summers, I'm not aware of any reviewing court that has adopted the dependent approach. So are you suggesting that we do certify the question? I'm suggesting that if the court has any hesitancy in adopting the independent approach, that it should certify the issue to the Wisconsin Supreme Court so that it can determine whether it's going to be the outlier. Indiana and Illinois, their highest courts, have addressed this squarely in both the Ream and the Razor case, and the Razor case really lays out the issues very succinctly, and those two states' highest courts have clearly considered this issue, analyzed it, and adopted the independent approach. So Wisconsin would need to determine if it truly wanted to be an outlier in terms of not only the circuit, but in terms of the clear weight of the majority in favor of the independent view. So looking at Subsection 3 independently, San Chalima failed in its burden to then prove unconscionability. And a party claiming unconscionability of a contract provision in order to have it struck has the burden in Wisconsin to prove that it's both procedurally unconscionable and substantively unconscionable. And the Wisconsin Supreme Court, in the Wisconsin Auto Title Loans case, says that the tip of scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability. And case law also holds that unconscionability rarely exists in contracts between sophisticated parties in a commercial setting. And here there is no procedural unconscionability. With the parties having agreed, with their eyes wide open, to the exclusion of consequential damages. San Chalima, in this case, is a sophisticated commercial entity. Revenues in excess of $5 million. It designs and contracts with other parties in the complex dairy processing silos. They were represented by counsel at the time that this agreement was entered into. They negotiated the contract. Provisions were struck and changed. And this was a stand-alone provision that was in all caps contained in the contract itself. And it was in a liability exclusions section as well. Given that there's no procedural unconscionability, San Chalima cannot meet its burden to prove unconscionability in this case. Also, there's not a substantive unconscionability, which really looks at whether the term is commercially reasonable. An exclusion of lost profits, an exclusion of consequential damages, is contained and commercially reasonable in contracts, including exclusive distributorship contracts. And one of which we cited in our brief, which is the Atlanta case, involving an exclusive sales agreement. So based on the parties' agreed-to exclusion of consequential damages, it's not unconscionable and it should therefore be enforced. Now, one of the issues that San Chalima has raised, and in order to try to escape the contract's exclusion of lost profits, is that San Chalima contends that lost profits, the ones awarded here, which is the only damages awarded by the district court, should somehow be characterized as direct damages. But case law reinforces that the lost profits here should be deemed consequential damages. And the key is to look at the particular contract between the parties. To be direct damages, the lost profits must flow directly from the breached contract itself. And that we just don't have here. Reading out of the parties' contract, an express provision that excludes lost profit without any provision in the contract itself from which those lost profits can be derived, would be improper. And San Chalima relies on the Biotronic case cited in the materials. And that dealt with an exclusive distribution agreement in which the lost parties flowed directly from the parties' agreement and not from agreements of collateral business arrangements outside the contract. And that was a very close case. It was a 4-3 decision. And to reach that decision, the court looked closely at the contract between the parties. The parties negotiated a pricing formula. The parties had a target volume. Each party calculated the minimum sales price. The contract used plaintiff's resale price as a benchmark to set the transfer price at which they would have to buy the product. So here, any profits the distributor might earn flowed directly from the contract itself. So lost profits became baked into that contract. And the court said, the contract here reflects an arrangement significantly different from a situation where the buyer's resale to a third party is independent of the underlying agreement. And that's our case. We have no pricing formulas, transfer prices, resale prices. There was no commission that was paid to San Chalima. We simply sold products to San Chalima. San Chalima then became the reseller and sold them to third parties. So to determine lost profits in this case, it's completely independent from the underlying distribution agreement between Walker and San Chalima. And really, the Pepsi case is spot on. And there, the Biotronic case itself discusses Pepsi and recognizes it as a case like ours, an exclusive distributorship contract case where lost profits in the form of sales to third parties were consequential damages because the contract itself didn't refer to those damages. We request the judgment of the district court be reversed, which awards solely lost profits to San Chalima. Thank you. Thank you, counsel. Mr. Reiner? Good morning. May it please the court. My name is Samuel Reiner, Reiner and Reiner. We represent the San Chalima Plaintiffs' Appellees in this court. I was going to begin, essentially, as Your Honor did, by pointing out that Murray is not only good law in Wisconsin, it continues to be and has continuously been cited, particularly in the Southern Financial case from this court in 2014, repeated, of course, in some of the district court cases, even as recently as 2015. Mr. Reiner, I'd like to talk a little bit about your complaint. There's a complaint, amended complaint, second amended complaint. It seems to get more particular as you move on with regard to the relief that you're seeking. The second amended complaint includes the request for lost profits. Why wasn't there a specific wherefore clause or provision of the wherefore clause seeking compensatory damages or disgorgement, other types of relief other than lost profits? We sought the lost profits as direct damage. That's really all that pertained. The damage limitation that refers to a remedy related to purchase orders was simply inapplicable in a situation where Walker literally went out and breached not only the exclusivity provisions, appointing us as an exclusive distributor in Latin America, but also the non-compete provisions that require them not to sell any products in any of the Latin American markets. They breached it completely. And these were existing sales, by the way, as distinguished from some of the cases cited in the reply brief, which relate to third-party prospective sales. We're talking about profits that could have been gained, had a particular market been protected, or had a particular performance been honored. These are not speculative future sales. These are actual sales that occurred, and I think that that's easy to distinguish from what's been argued in the reply. But the point is that these damages flow directly from the contract because Walker was required not to sell in those markets. They did, they broke it, and there was no other effective remedy. And that's why we cited Justice Cardoso in some of the other cases for the proposition that, and this also relates to the Moore case, the Moore versus the Boning case. That was a trailer case in which the distinction between consequential damages in tort could be direct damages in an antitrust claim, which is more analogous to a contract claim. It is a case-by-case approach that even the New York cases that my colleague cited to you refer to as the settled approach when you're construing a contract. And so in this particular case, Judge Peterson got it right. He looked at the contract. He said, listen, if there was a purchase order and Walker didn't fulfill it, we could get our money back. We'd get our deposit back. But when Walker sells directly in our territory and actually takes the profit from our customer in our market that we've developed, there is no adequate minimum remedy. There's no essential remedy, and therefore it is unconscionable per se. And my colleagues have agreed and admitted in their brief that this is a question of law, not a question of fact. It's a question of law. If there's no remedy, it's per se unconscionable. And that's exactly what Judge Peterson found. He said the analysis was straightforward. And that's ironic because that's exactly what this court said in the Southern Financial case. In that case, you had a bank selling a distressed portfolio of loans. There was a formula that at least allowed the non-breaching party to get back a certain amount up to the amount that they paid for the portfolio. And even though some of the loans in the portfolio were not as represented by the bank, at least there was a minimum adequate remedy. And the actual purchaser exceeded, upon selling some of those assets, exceeded the amount of money that they actually paid. So it's not unlike the situation we had at Murray in which the court found that repair and placement is not, if it's not done, if it's not accomplished in a reasonable period of time, it is an ineffective and essentially useless remedy. And therefore it's inadequate and other UCC remedies would take over. One of the other points I wanted to stress was the construction of the contract as a whole. My colleagues want to read and want you to read each particular section and paragraph of the contract in isolation and with this blinkered literalism, which I thought was an interesting phrase, that comes from the Veenstal case. This is not how you read a contract. And most of the cases uniformly appreciate that and follow it. In this case, the... the remedy, we say, is completely lacking. The contract failed of its essential purpose in protecting the non-breaching party from the effect of a breach, especially one that went to the essence of the contract. And so therefore Judge Peterson got the analysis correct. If there are any other questions, I'll be happy to take them. Help us understand why there wasn't a broader net cast. I understand that you may feel that the lost profits were perhaps the core of your claim, of your case, but I think Walker points out in this brief series of times that there are other types of damages that you could have sought but chose not to. We need to hear an argument with regard to that and the failure of the essential purpose issue. We went just directly to the direct sales. We didn't want to try to hypothesize any other losses that stem from the contract. We had significant investments made in opening up and improving our sales force in the Mexican market particularly. The idea of the contract was to build a facility in Mexico to increase the attractiveness of pricing for these tanks that were being built in a local area and not had to be shipped from Wisconsin, and this was a price-sensitive market, as the judge recognized. The types of things that come to mind are a call center, promotional materials, trade show fees, things like that that would be outside of lost profits, but those were never pleaded, were they? Well, because we actually had to have sales. I mean, that was part of what we incurred as our part of the bargain in the contract, but it was not a direct loss that was caused by Walker's breach in this case. Walker, these are huge sales in relative terms. They took these sales. They knew exactly where the products were going to land. These are big things that are built in place. The evidence was that they're engineering drawings that actually depict the location and the configuration of these dairy-style silos, so it's something they knew where they were going. They knew what they were going to do with them, and that was the direct damage that we felt that we incurred. We could have asked for more, but we would have received the same incredulity, perhaps, that has been expressed in the briefing, but the reality of it is we went after what we felt were direct damages based on the direct breach of the contract, as Judge Peterson found. Thank you for the response. Thank you very much. We would encourage the affirmance of Judge Peterson's decision. Thank you, counsel. May it please the Court. Counsel is arguing there's no other effective remedy, but here there were. There were compensatory damages, and it was Sancho Lima's burden to plead, prove, and seek those damages, and it strategically chose not to do so. But really there's a problem with the premise of that as well. He wants the Court to adopt the principle that when there's no remedy, that provision, excluding lost profits, is per se unconscionable, and that's simply not the law. He's arguing that every time a remedy fails in its essential purpose, it automatically makes it unconscionable. But really that's a subsection 2 argument under the UCC, and subsection 3 is independent and requires an analysis of simply substantive and procedural unconscionability, neither one of which here exists in the case at hand. Third, opposing counsel argues as to section 10G of the contract itself being limited somehow to section 10F, but that truly is not a fair reading of the contract. The plain words of the contract provide that when the exclusion of consequential damages should apply to all matters arising out of or in connection with the agreement, it in no way is limited by or references the paragraph directly preceding it, and that would be an improper reading of the contract to read it so. With that, because Sancho Lima has failed to present any evidence of unconscionability, and given that the lost profits here, given the nature and the terms of the party's contract are consequential damages, we would request that the court reverse the decision of the district court. Thank you. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.